## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

MAIMOUNA CAMARA,                    *

               Plaintiff       *

           v.                  *          Civil Case No. 8:23-CV-1782-AAQ

BLACK DIAMOND RESTAURANT            *
LLC, *et al.*,
                              *

            Defendants.        *

## MEMORANDUM OPINION AND ORDER

This is a case concerning a restaurant's failure to adequately pay one of its employees according to state and federal law.  Pending before the Court is Plaintiff Maimouna Camara's Motion for Attorney Fees and Costs, ECF No. 56.  For the reasons discussed below, the Court will grant the Motion in part, and deny it in part.

## BACKGROUND

Ms. Camara worked as a cocktail waitress at Black Diamond Restaurant from February to June 2023.  ECF No. 55, at 1.  She alleges that Defendants—the restaurant and an individual that owns the restaurant—failed to pay her the required minimum wage for the duration of her employment, instead compensating her only through gratuities.  *Id.* at 1-2; ECF No. 34, at 2.  Defendants deny these allegations.  *Id.*  They maintain that Ms. Camara was not an employee, but rather an independent contractor, and that she did not work as many hours as she claims.  ECF No. 55, at 1.

Ms. Camara brought this lawsuit in July 2023, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"),

1

Md. Code Ann. Lab. & Empl. § 3-419, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-503 & 3-505. *Id.* at 2. Specifically, she alleged violations stemming from Defendants' failure to: notify her of tip credit rules, pay the Maryland minimum wage, compensate her for training periods, and pay her promised gratuities for several workdays. *Id.* As relief, she sought backpay ($5,321.42) and liquidated damages ($10,642.84). *Id.*

A month after filing her initial lawsuit, Ms. Camara filed an Amended Complaint altering some of her allegations regarding the Defendants. ECF Nos. 3, 4. Later in August 2023, she filed a Motion for Alternate Service as to one of the Defendants, whom she had "not been able to locate and serve" despite reasonable diligence. ECF No. 5, at 3. The Court granted the Motion. ECF No. 6. Ms. Camara eventually served all Defendants, and after the time period for a response to the Complaint expired, filed a Motion for Clerk's Entry of Default as to Black Diamond Restaurant. ECF No. 11. The Clerk entered the requested default shortly thereafter, but later vacated it upon Defendants' Motion. ECF Nos. 13, 15, 35.

The parties engaged in limited discovery. ECF No. 55, at 2. As the Court summarized in a prior opinion:

> Plaintiff issu[ed] document requests, requests for admissions, and two sets of interrogatories. Defendants responded to the requests for admissions. Had the parties not reached a settlement, Plaintiff would have moved to compel responses to her remaining discovery requests. Plaintiff also served a third-party subpoena on "Clover," the company that provides Black Diamond with software, to obtain Plaintiff's time records. Defendants also served Plaintiff with interrogatories and document requests to which Plaintiff responded.

*Id.* (citations omitted).

The parties ultimately reached a settlement agreement under which Defendants agreed to pay Ms. Camara $8,500. *Id.* at 3. The Court approved the settlement agreement in February 2024,

finding it "reflect[ed] a fair and reasonable resolution of a *bona fide* dispute between the parties." *Id.* at 4.

The parties were unable to reach an agreement with respect to the appropriate amount of attorney's fees, so Plaintiff filed the present Motion.  ECF No. 56.  Defendants filed an Opposition after the Court warned that failure to do so would result in the Motion being deemed conceded. ECF Nos. 58, 59.  The Motion has now been fully briefed.  ECF Nos. 62, 63.  In total, Plaintiff seeks $31,720.00 in fees and $1,208.97 in costs, for a total of $32,928.97.  ECF No. 63, at 3.

## DISCUSSION

"Prevailing plaintiffs in wage and hour disputes are entitled to recover their attorneys' fees and legal expenses" under the FLSA and MWHL.  *Velasquez Flores v. Elite Com. Cleaning, LLC*, No. 20-CV-3600, 2024 WL 916250, at *2 (D. Md. Mar. 1, 2024).  Both statutes provide that the Court "shall" award "reasonable" attorney's fees and costs.  29 U.S.C. § 216(b) (FLSA); Md. Code Ann. Lab. & Empl. § 3-427(d)(1)(iii) (MWHL).  The MWPCL provides courts with discretion in awarding attorney's fees and costs.  Md. Code Ann. Lab. & Empl. § 3-5507(b)(1) ("[T]he court may award . . . reasonable counsel fees and other costs.").  In all circumstances, "the amount of such fees 'is within the sound discretion of the trial court.'"  *Velasquez Flores*, 2024 WL 916250, at *2 (quoting *Lippe v. TJML, LLC*, No. 12-CV-260, 2013 WL 5234230, at *2 (D. Md. Sept. 13, 2013)).

In this case, the proper award amounts to $22,845.00 in attorney's fees and $1,208.97 in costs.  The Court addresses attorneys' fees and costs in turn below.

### I.  Attorneys' Fees

"To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated

to successful ones; and (3) evaluate the degree of success of the plaintiffs." *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 21 (4th Cir. 2019) (per curiam). "Once a fee request is submitted, it becomes the responsibility of the party challenging the request to articulate the areas where an award would be inappropriate." *Barnes v. NCC Bus. Servs., LLC*, No. 18-CV-1473, 2019 WL 4141012, at *2 (D. Md. Aug. 30, 2019). "[T]he Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge." *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, No. 95-CV-309, 2002 WL 31777631, at *10 (D. Md. Nov. 21, 2002).

To determine the lodestar figure, the Court "multipl[ies] the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). In determining the reasonableness of billing rates and hours worked to be used in the lodestar calculation, the Fourth Circuit has directed courts to consider the following factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* factors"):

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 & n.5.

This task "should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), and courts need not "become . . . accountants" to determine the proper award,

*Fox v. Vice*, 563 U.S. 826, 838 (2011).  "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."  *Id*.

Defendants advocate for a lower hourly rate for each of Plaintiff's attorneys and argue that Plaintiff seeks fees for an unreasonable number of hours.  ECF No. 59.  Defendants' preferred approach would result in a lodestar of $16,300—approximately half of what Plaintiff seeks.  ECF No. 59, at 15; ECF No. 63, at 3.  The Court will first determine the appropriate rate, then assess the number of hours that should have been reasonably expended on the case, and conclude with a final review of the lodestar figure.

### A.    Reasonable Rates

"A fee applicant is obliged to show that the[ir] requested hourly rates are consistent with 'the prevailing market rates in the relevant community for the type of work for which [they] seek an award.'"  *McAfee*, 738 F.3d at 91 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).  The fee applicant bears the burden of proving reasonableness.  *Robinson*, 560 F.3d at 244-45.  Appendix B to this Court's Local Rules provides presumptively reasonable hourly rates tied to an attorney's years of experience.  D. Md. Local R. App. B(3); *Gonzalez v. Caron*, No. 10-CV-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).  The Court may deviate from the rates ranges in Appendix B upon consideration of "affidavits of lawyers in the [relevant] legal community attesting to the customary rates charged for [similar matters]."  *Carranza v. Ramirez*, No. 20-CV-2687, 2022 WL 4080310, at *4 (D. Md. Sept. 6, 2022) (quoting *Client Network Servs., Inc. v. Smith*, No. 15-CV-2207, 2018 WL 4019767, at *2 (D. Md. Aug. 18, 2018).  While enhancements above the guideline rates are atypical, *id.*, significant upward departures may be warranted in particular circumstances, *Ramnarine v. Rainbow Child Dev. Ctr., Inc.*, No. 17-CV-2261, 2022 WL 16709764, at *7 (D. Md. Nov. 4, 2022).  For example, higher rates

could be appropriate if, among other things, counsel took on representation of a party who may not otherwise be able to find legal representation or the litigation established new important legal precedent.  *Id.*

Plaintiff proposes the following rates for the involved attorneys; each is higher than those called for in Appendix B: (1) Omar Vincent Melehy, who has 37 years of experience, at $675 per hour; (2) Suvita Melehy, who has 28 years of experience, at $625 per hour; (3) Andrew Balashov, who has 8 years of experience, at $400 per hour, and (4) paralegals and paraprofessionals at $225 per hour.  ECF No. 56-1, at 6.  In contrast, Appendix B provides the following ranges: $300-$475 per hour for an attorney with more than 20 years of experience, covering both Mr. and Mrs. Melehy; $165-$300 per hour for an attorney with 5 to 8 years of experience like Mr. Balashov; and $95-$150 per hour for paralegal and paraprofessional work.  D. Md. Local R. App. B(3).  For their part, Defendants argue that hourly rates at the midpoint of the Appendix B range are more appropriate for each timekeeper.  ECF No. 59, at 8 ($387.50 per hour for Mr. Melehy and Ms. Melehy, $232.50 per hour for Mr. Balashov, and $122.50 per hour for paralegals and paraprofessionals).  The Court will apply the following rates at the top end of Appendix B's respective ranges: $475 per hour for Mr. Melehy and Ms. Melehy, $300 per hour for Mr. Balashov, and $150 per hour for paralegals and paraprofessionals.

The strong weight of authority supports application of rates within Appendix B's ranges absent unique circumstances.  *See Guillen v. Armour Home Improvement, Inc.*, No. 19-CV-2317, 2024 WL 1346838, at *3 (D. Md. Mar. 29, 2024).  Indeed, there is a "clear consensus among judges in this district in [wage and hour] fee petition decisions . . . that the Guidelines rates are reasonable—including in cases involving [Plaintiff's counsel]." *Id.* (citing *De Parades v. Zen Nail Studio, LLC*, No. 20-CV-2432, 2023 WL 8235753, at *3 (D. Md. Nov. 28, 2023); *Carrera v. EMD*

*Sales, Inc.*, No. 17-CV-3066, 2021 WL 3856287, at *6 (D. Md. Aug. 27, 2021); *Ramnarine*, 2022 WL 16709764, at *7).  Cases issued as recently as August 2024 underscore this point.  *Guillen*, 2024 WL 1346838, at *3.

Nevertheless, Plaintiff argues that a drastic upward departure is necessary because the rates Appendix B specifies are outdated, and as a result, do not reflect current market rates for comparable work.  ECF No. 56-1, at 5-10; ECF No. 62, at 2-7.  The Appendix B ranges were last updated in 2014, meaning they are more than ten years old at the time of this decision.  ECF No. 56-1, at 5 (citing *Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, No. 13-CV-1888, 2016 WL 6634856, at *3 n.2 (D. Md. Nov. 8, 2016)).  Plaintiff notes "the rampant increase in the rate of inflation over the last three years," and suggests that this court "must . . . adjust[] [Appendix B rates] to reflect current market rates."  *Id.* at 5, 9.  However, "this Court has previously (and recently) rejected the argument that fees should necessarily be awarded in excess of the Local Rules' guidelines to account for inflation."[1]  *Fowler v. Tenth Planet, Inc.*, No. 21-CV-2430, 2024 WL 3738347, at *3 (D. Md. Aug. 9, 2024).  While it is true the rates were adopted a decade ago, this Court has held "that fact does not mean that these rates are unreasonable."  *Guillen*, 2024 WL 1346838, at *3.

Plaintiff next points to instances where judges in this district awarded fees "significantly higher than the Appendix B rates."  ECF No. 56-1, at 5-6, 15-17.  Many of the selected cases cannot be considered "like work" because they are distinguishable.  *McAfee*, 738 F.3d at 88 & n.5.  For example, several arise out of litigation under the Social Security Act, which operates under a

---

[1] Plaintiff proposes that the Court adjust Appendix B rates for inflation using the Legal Services Index, as established by the Fourth Circuit in *Sullivan v. Sullivan*, 958 F.2d 574 (4th Cir. 1992).  ECF No. 56-1, at 9.  Because the Court declines to undertake this task, it need not engage with the particular methodology proposed.

distinct fee agreement regime. *See Mudd v. Barnhart*, 418 F.3d 424, 427-28 (4th Cir. 2005). Most Social Security cases involve contingency fee agreements. *Matthew C. v. Comm'r, Soc. Sec. Admin.*, No. 20-CV-3240, 2023 WL 3043906, at *2 (D. Md. Apr. 21, 2023). Rather than utilizing the lodestar method, in the Social Security context, courts consider whether the contingency fee— which cannot exceed 25% of past-due benefits awarded in a favorable judgment—is "reasonable." *Id.*; 42 U.S.C. § 406(b)(1). As a result, "[c]ourts in the Fourth Circuit have approved contingency fee agreements that produce much higher hourly rates" than those listed in Appendix B "in successful Social Security appeals." *Cynthia P. v. Kijakazi*, No. 21-CV-434, 2023 WL 6283504, at *2 (D. Md. Jan. 10, 2023) (quoting *Terri H. v. Comm'r, Soc. Sec. Admin.*, No. 16-CV-3106, 2019 U.S. Dist. LEXIS 17095, at *3-4 (D. Md. Feb. 4, 2019)). Plaintiff's comparison to *In re: Creative Hairdressers, Inc. et al.*, No. 20-CV-14583, ECF No. 778 (Bankr. D. Md. 2020) fares no better, because it too arose in a different context. There, the Bankruptcy Court awarded rates well above those listed in Appendix B. *Id.* (using an hourly rate $400 higher than that in Appendix B for a lawyer with 35 years of experience). As with the case above, this example is distinct because it comes from the context of complex bankruptcy proceedings. This is a relatively standard wage and hour case.

Plaintiff next points to several instances where her counsel was awarded fees closer to those sought here. Although all are wage and hour cases, none is squarely on point. Several involve multiple plaintiffs, which merited a higher award. ECF No. 56-1, at 15-17 (citing *Quijano v. Mizpah Build. Servs., LLC*, No. 19-CV-38 (D. Md.) (multiple plaintiffs); *Boyd v. SFS Comms., LLC et al.* No. 15-CV-3068 (D. Md.) (Rule 23 class action); *Alvarenga v. CCC USA LLC*, No. 22-283 (D. Md.) (multiple plaintiffs); *Butler v. PP&G, Inc.*, No. 20-CV-3084 (D. Md.) (FLSA collective action)). This case has only one plaintiff. Further, in many of the cited cases, the motion

for fees was unopposed, which is not the case here.  Accordingly, while these comparisons are useful touchpoints, they do not present compelling examples of a "customary fee for like work." *McAfee*, 738 F.3d at 88 & n.5.  Ultimately, it is the circumstances of this case and this context that control.  *See id.*; *Rum Creek Coal Sales Inc. v. Caperton*, 31 F.3d 169, 178-80 (4th Cir. 1994).

Plaintiff also points to a handful of cases in a footnote without further elaboration.  ECF No. 56-1, at 6 n.1.  None maps cleanly on this case.  Most illustrate modest increases in the hourly rate.  *De Simone v. VSL Pharms., Inc.*, No. 15-CV-1356, 2018 WL 6680922, at *4 (D. Md. 2018) (decreasing attorneys' hourly rates to fall within Appendix B ranges and finding $15 per hour increase reasonable for the most senior attorney); *Plasters' Local Union No. 96 Pension Plan v. Perry*, 711 F. Supp. 2d 472, 477-78 (D. Md. 2010) (finding rates "slightly exceed[ing]" Appendix B ranges reasonable "because they [were] similar to rates charged by other lawyers litigating complex ERISA matters"); *CCA Fin., LLC v. Kulukurgiotis*, No. 14-CV-3282, 2014 WL 6388105, at *3 (D. Md. Nov. 13, 2014) (finding a "slightly higher" rate reasonable under the circumstances); *Duvall v. O'Malley*, No. 94-CV-254, 2016 WL 3523682, at *14 (D. Md. June 28, 2016) (allowing paralegals to be compensated at a rate $10 more per hour than that set forth in Appendix B); *Life Techs. Corp. v. Life Techs. Corp.*, No. 10-CV-3527, 2012 WL 4748080, at *2 (D. Md. Oct. 2, 2012) (allowing "reasonable" increases above Appendix B ranges).  In contrast, Plaintiff here seeks larger increases: $200 for Mr. Melehy, $150 for Ms. Melehy, $100 for Mr. Balashov, and $75 for paralegals and paraprofessionals.

In the remaining case Plaintiff cites, the Court awarded a $145 per hour increase in rate. *Laborers' Dist. Council Pension & Disability Trust Fund. No. 2 v. Parkinson Constr. Co., Inc.*, No. 13-CV-294, 2014 WL 1343784, at *5 (D. Md. Apr. 3, 2014).  The Court noted that other judges in this district had found the attorney's hourly rate to be reasonable "even though it is greater

than . . . [the] guideline rate" and that consideration of the *Johnson* factors further bolstered this conclusion. *Id.* The same is not true here. Plaintiff's counsel has been awarded Appendix B rates as recently as August 2024 and this case is neither complex nor cumbersome. *See, e.g.*, *Guillen*, 2024 WL 1346838, at *3.

Next, Plaintiff points to supporting affidavits from legal practitioners in the area—Charles W. Day Jr., Joseph B. Espo, and Jessica P. Weber—to support the assertion that her requested rate reflects the current market hourly rate. ECF Nos. 56-5, 56-12, 62-2. To further bolster the affidavits, Plaintiff also directs the Court to a 2021 Wolters Kluwer survey of average rates charged by attorneys practicing labor and employment law in Baltimore, showing rates comparable to those counsel seeks here. ECF No. 56-1, at 8; ECF No. 56-8. Mr. Day, an employment lawyer, reviewed filings in this case and concluded that Plaintiff's requested fees are reasonable and in line with current market rates for employment lawyers within this district. ECF No. 56-5, at 1-2. He further extolls each lawyer's credentials and expertise. *Id.* at 3-4. Mr. Espo and Ms. Weber both state that their firm, Brown, Goldstein & Levy ("BGL"), would request higher rates for attorneys with Mr. Melehy's years of experience. ECF No. 56-12, at 3; ECF No. 62-2, at 3. Ms. Weber goes further to state BGL would charge higher rates for all three attorneys. ECF No. 62-2, at 3. Mr. Espo's and Ms. Weber's affidavits, while helpful, are limited by the fact that they were prepared for different cases—neither declarant considered the particular circumstances of this case. ECF Nos. 56-12, 62-2. "While a court may rely on affidavits from local attorneys opining on the reasonableness of a plaintiff's requested rates, it may also take judicial notice of its own knowledge of the local legal market." *Reyazuddin v. Montgomery Cnty.*, No. 11-CV-951, 2022 WL 4608331, at *11 (D. Md. Sept. 30, 2022) (citations and quotation marks omitted). In this district, "that market knowledge is embedded in . . . Appendix B." *Id.* (quoting *Chaten v. Marketsmart LLC*,

No. 19-CV-1165, 2020 WL 4726631, at *3 (D. Md. Aug. 14, 2020)).  Accordingly, the Court acknowledges the affidavits and survey as useful datapoints, but they do not supersede Appendix B's authority given the routine nature of this case.

For their part, Defendants point to numerous cases in which Plaintiff's counsel were awarded Appendix B rates.  ECF No. 59, at 6-7 (citing *Guillen*, 2024 WL 1346838, at *3 (awarding the high end of the Appendix B ranges for each attorney and the paralegals)).  However in many of these cases, Plaintiff's counsel was awarded the top-end of the range, which cuts against Defendants' argument for mid-range rates.  *See id.*  While Defendants note that Plaintiff concedes the case does not present novel or difficult questions and that counsel did not "forego taking any cases to work on this case," they do not present any specific argument for why mid-range rates are more appropriate than top-end rates.  ECF No. 59 (quoting ECF No. 56-1, at 15).[2]  While Plaintiff's arguments above do not merit departure from Appendix B's guidelines, they merit awarding the top end of what the Appendix allows.

Finally, as it did in *Ramnarine*, the Court emphasizes the limited scope of its ruling here.  2022 WL 16709764, at *7.  A departure, even a significant one, may be appropriate in a different case.  See *id.* (noting that a departure is particularly appropriate where counsel: 1) undertook representation of a party who otherwise may not be able to find representation; 2) was able to achieve significant systemic reform; 3) establish significant new legal precedent; and/or 4) successfully certify a class).

**B.    Time and Labor Expended**

---

[2] Defendants suggest that Plaintiff's counsel advocates for higher rates in bad faith by failing to bring the Court's attention to recent cases in which other judges awarded lower rates.  ECF No. 59, at 5-7.  While Plaintiff's briefing could have addressed this point more head-on, the Court need not address this argument as it has rejected Plaintiff's proposed rates for other reasons.

To recover attorney's fees, counsel must provide "'records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Guillen*, 2024 WL 1346838, at *4 (quoting *Matias Guerra v. Teixeira*, No. 16-CV-618, 2019 WL 3927323, at *2 (D. Md. Aug. 20, 2019)).  Such records are typically comprised of timesheets and affidavits explaining the services provided.  *Ramnarine*, 2022 WL 16709764, at *7.  While the party seeking the award of fees bears the burden of showing the reasonableness of the hours worked, "the Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge." *Argonaut Ins. Co. v. Wolverine Constr., Inc.*, 976 F. Supp. 2d 646, 657 (D. Md. 2013) (quoting *Thompson*, 2002 WL 31777631, at *10.

Plaintiff's counsel split their time into the following categories: (1) initial investigation and continuing factual development; (2) pleadings; (3) effecting service on Defendants; (4) general case management and client communication; (5) discovery and discovery disputes; (6) calculating damages; (7) settlement and joint motion for approval; (8) motions; and (9) fee petition.  ECF No. 56-1, at 11-14; ECF No. 56-3.  In addition to attacking specific time entries, Defendants argue generally that Plaintiff's counsel attempts to bill for clerical work, which "is not billable to an adversary," ECF No. 59, at 8-10; *id.* at 13 (quoting *Castillo Pacheco v. Mezeh-St. Mary's LLC*, No. 21-CV-2521, 2023 WL 5411071, at *4 (D. Md. Aug. 22, 2023)), and that counsel should have allocated less time to Mr. Melehy in favor of lower billing attorneys.  The Court addresses the general arguments first, then reviews the specific time entries.

### 1.    Clerical Work

"Clerical work is not billable to an adversary."  *Castillo Pacheco*, 2023 WL 5411071, at *4.  Clerical work incudes tasks like assembling binders, filing documents with the court, scanning

or printing documents, and preparing cover sheets. *Mancilla v. Chesapeake Outdoor Servs. LLC*, No. 22-CV-32, 2024 WL 2803947, at *6 (D. Md. May 31, 2024). Defendants argue that the following time entries performed by paralegals are clerical, and thus not billable:[3]

- 0.1 hours spent reviewing an "email from [the] client regarding Defendant's efforts to reach [out] to her about settlement of the case." ECF No. 59, at 14; ECF No. 62-4, at 4.

- 0.1 hours of "[e]mail correspondence with [the] client regarding the drafted Complaint." ECF No. 59, at 14; ECF No. 62-4, at 4.

- 0.2 hours spent "[r]evising [f]irst [s]et of [i]nterrogatories . . . after Mr. Melehy's corrections." ECF No. 59, at 14; ECF No. 62-4, at 4.

- 0.1 hours "[r]evising [t]rack changes [S]econd [A]mended [C]omplaint." ECF No. 59, at 14; ECF No. 62-4, at 4.

- 0.1 hours "[d]rafting [c]over letter to [opposing counsel] regarding Rule 45 notice." ECF No. 59, at 14; ECF No. 62-4, at 4.

- 0.1 hours spent "[r]evising [a] cover letter to Clover." ECF No. 59, at 14; ECF No. 62-4, at 4.

- 0.4 hours spent "[r]eviewing, proofreading, and revising [M]otion for [L]eave to [F]ile [A]mended [C]omplaint." ECF No. 59, at 14; ECF No. 62-4, at 4.

- 0.3 hours spent "[r]eviewing, proofreading, and revising the second amended complaint." ECF No. 59, at 14; ECF No. 62-4, at 4.[4]

---

[3] These tasks were completed by two individuals: Raya Henderson and Abril Tingey-Espinosa. Each worked as a paralegal at some point during the case. ECF No. 56-4, at 5.

[4] Plaintiff's counsel "agreed to no charge an additional $1,987.50" in fees in response to Defendants' Opposition. ECF No. 62, at 12; *see* ECF No. 62-4, at 4-5. The no-charged time includes several entries unaddressed by Defendants, in addition to the following challenged entries conducted by paralegals/paraprofessionals: 0.6 hours assembling exhibits for a motion for alternate service; 2 hours proofreading Plaintiff's memorandum in support of its Motion for Attorneys' Fees and Costs; 0.1 hours in a telephone conversation with Capital Process Server; 0.9 hours on cost backups; 0.1 hours revising a cover letter; and 0.1 hours emailing Defendants' counsel a copy of the settlement demand. ECF No. 62-4, at 4-5. The Court does not address these entries because they are no longer at issue.

None of the tasks described in these time entries are clerical.  It is well-accepted that paralegals conduct legitimate legal work, like assisting with crafting interrogatories, checking citations, and drafting correspondence with a client or another party.  *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *Harwood v. Am. Airlines, Inc.*, 37 F.4th 954, 961 (4th Cir. 2022).  The Supreme Court has endorsed the use of paralegals for such tasks because "encouraging the use of lower cost paralegals rather than attorneys wherever possible[] . . . 'encourages cost-effective delivery of legal services and . . . furthers the policies underlying civil rights statutes.'"  *Missouri*, 491 U.S. at 288 (quoting *Cameo Convalescent Ctr., Inc. v. Senn*, 738 F.2d 836, 846 (7th Cir. 1984).  Each of these time entries qualifies as acceptable paralegal work.  The Court will accordingly include these hours in its award.

### 2. Whether Services Should Have Been Performed by Less Experienced Attorneys

As a general matter, Defendants oppose numerous entries by Mr. Melehy on the grounds that lower-billing attorneys should have performed those services.  ECF No. 59, at 8-10.  Merely suggesting someone else should have completed a task is not enough.  A defendant must explain why such a choice makes an entry unreasonable.  *See Ramnarine*, 2022 WL 16709764, at *9 (explaining that the Court required a "specific argument regarding the appropriate amount of the time that should have been expended" on a particular task or an identification of deficient entries).  Contrary to Defendants' argument, employing a more junior attorney to perform these same tasks would not necessarily have reduced the fees charged, as it may have taken a less experienced attorney more time to perform the same research or to draft filings.  A more experienced attorney may be able to perform these same tasks more efficiently.

In other cases, the task involves unique judgment specific to a more experienced attorney. For example, Defendants argue that "Mr. Melehy's hours for research should be reduced because those efforts could have been performed by a lower billing attorney," proposing a decrease from 0.9 hours to 0.5.  ECF No. 59, at 8.  The specific nature of the entry—"ensur[ing] that Plaintiff's claims had merit and would not be subject to dismissal," ECF No. 62, at 8, by researching law related to the tipped minimum wage and the circumstances under which training sessions must be compensated, ECF No. 62-1, at 2—is uniquely suited to more senior attorneys.  This determination requires not only an examination of caselaw, but the exercise of judgment based on the more senior attorney's litigation experience.  Defendants fail to elaborate on this argument in their Opposition; accordingly, the Court declines to adopt this reasoning as a general matter.

### 3.      Challenged Time Entries

"Counsel for a prevailing party has a duty to exercise 'billing judgment' to 'exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'"  *Daly v. Hill*, 790 F.2d 1071, 1079 (4th Cir. 1986) (quoting *Hensley*, 461 U.S. at 434).  Such a duty stems from a lawyer's ethical obligations to their clients—"hours that are not properly billed to one's *clients* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Id.* (quoting *Hensley,* 461 U.S. at 434) (emphasis in original).  Part of this burden entails providing the Court with accurate and detailed records describing the nature of compensable tasks.  "The court may reduce the number of hours awarded if the documentation is vague or incomplete."  *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).  "[C]ounsel, of course, is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures."  *Id.* at 789 (quoting *Hensley*, 461 U.S. at 437 n.12).  Proceeding to those specific entries Defendants challenge, the Court agrees

that some are deficient, but will only decrease the hours commensurate with Plaintiff's voluntary reductions submitted with her Reply brief.[5]

### a. Time Spent on Initial Investigation and Factual Development

Plaintiff seeks compensation for 5.4 hours spent on initial investigation and continuing factual development. ECF No. 62-1, at 2. Defendants take issue with Mr. Balashov's expenditure of 0.8 hours for "researching corporate structure," arguing it should be reduced to 0.4 hours because it is "excessive."[6] Mr. Balashov used this time to determine Defendants' "operation and ownership structure" which clearly relates to the viability of Ms. Camara's claims. ECF No. 62, at 8. Spending less than an hour investigating such baseline facts is reasonable and expected.

### b. Time Spent Amending the Pleadings

Plaintiff seeks compensation for 7.4 hours related to drafting and amending pleadings. ECF No. 62-1, at 14-15. Defendants take issue with Mr. Melehy's expenditure of 3.7 hours for drafting the Complaint and Amended Complaints, suggesting the "relative simplicity of this minimum wage case" warrants only 2 hours. Mr. Melehy spent 2 hours drafting the initial Complaint, which contains detailed factual allegations about the identity of the Defendants, Ms. Camara's lack of break time during her shifts, and an incident where Defendants withheld

---

[5] In the initial Motion, Plaintiff's counsel no-charged several time entries as an exercise of billing judgment. ECF No. 56-1, at 11. In Reply, counsel voluntarily no-charged several additional entries that Defendants took issue with: 0.5 hours spent by Mr. Melehy researching relevant case law on July 3, 2023, ECF No. 62, at 11; and 2 hours spent by a paralegal on March 26, 2024, proofreading and cite-checking Plaintiff's Memorandum in Support of Motion for Attorneys' Fees, *id.* at 5.

[6] In their Opposition, Defendants refer to a July 5, 2023, entry by Mr. Balashov, but no entry exists for that day. ECF No. 59, at 8; *see* ECF No. 56-3, at 2; ECF No. 62, at 2. Instead, their description of the entry as "researching corporate structure" seems to refer to a July 3, 2023, entry. ECF No. 59, at 8; *see* ECF No. 56-3, at 2; ECF No. 62, at 2.

Ms. Camara's wages to recoup the cost of a customer's unpaid bill.  ECF No. 1.  Accordingly, the amount of time counsel spent drafting the Complaint was not unreasonable.

Mr. Melehy next spent 0.6 hours "amending the Complaint to remove one defendant and add some additional factual allegations."  ECF No. 62-1, at 14.  The redlined version of the First Amended Complaint shows two changes: removal of information about one Defendant and the addition of two sentences explaining Plaintiff suspected there was an additional owner of the restaurant.  ECF No. 4.  Although the change is relatively minimal, 0.6 hours is not an unreasonable amount of time and counsel's description of the changes are accurate.

Finally, Mr. Melehy spent 0.3 hours "[m]aking additional substantive changes to the [S]econd [A]mended [C]omplaint and to the [M]otion to [A]mend the [C]omplaint."  ECF No. 62-1, at 14.  The Second Amended Complaint includes significant changes warranting this time, including additional factual allegations detailing the hours where Ms. Camara was unpaid for attending training sessions.  ECF No. 34.  Accordingly, the Court will allow all 7.4 hours in this category.

### c.  Time Spent Effecting Service

Plaintiff seeks compensation for 8.4 hours spent effecting service on Defendants.  ECF No. 62-1, at 2-4.  Defendants contest 3.9 hours Ms. Henderson billed on July 10, 2023, for correspondence with each of the three Defendants.  ECF No. 59, at 8-10.  Plaintiff's counsel has agreed to no-charge a portion of this time, lowering the total hours spent from 3.9 to 1.2.  ECF No. 62-4, 4-5.  This decrease in hours corresponds with Defendants' argument.   Accordingly, the court awards 1.2 hours for these three entries.

Next, Defendants object to 4.8 hours Ms. Henderson spent regarding service from July 26 to August 15, 2023, but do not identify particular entries or explain why they believe such charges

to be excessive.  ECF No. 59 at 8-9.  One such entry—a phone call with Capitol Process Server—was voluntarily no-charged by Plaintiff.  ECF No. 62-4, at 5.  The Court declines to strike the remaining entries absent specific arguments, particularly in light of the difficulties Plaintiff faced with respect to service in this case.  *See Ramnarine*, 2022 WL 16709764, at *9.

### d.  Time Spent on Discovery

Plaintiff seeks compensation for 18.8 hours Plaintiff's counsel devoted to conducting discovery and resolving discovery disputes.  ECF No. 62-2, at 7-10.  Defendants generally allege that these hours are inflated given overstaffing of the case and redundancy in entries.  ECF No. 59, at 9.  Defendants object to Mr. Melehy's time entries for drafting requests for admission, review of discovery drafts, and researching an HR-related software Defendants used—which total 4.7 hours.  ECF No. 62-1, at 7.  To the extent Defendants suggest overlapping work, they misread the time entries.  As Plaintiff notes in its Reply, a paralegal completed a first draft of several discovery documents.  ECF No. 62, at 9; ECF No. 62-1, at 7.  Mr. Melehy then reviewed the drafts and refined them "to include specific requests pertinent to the case."  ECF No. 62, at 9.  The time entries reflect an efficient split of work between a paralegal and an attorney, rather than unnecessary duplication.  Defendants fail to identify any other time entries as deficient in this regard; accordingly, the Court will award the full 18.8 hours.

### e.  Time Spent Working on Motions

Plaintiff seeks compensation for 5.7 hours her counsel spent drafting a Motion for Default Judgement and a Motion for Leave to File an Amended Complaint.  ECF No. 62-1, at 12-13.  *Id.*  Defendants contest the 2.1 hours Mr. Melehy spent drafting the Motion for Leave to File an Amended Complaint because it is "excessive given the relative simplicity of the motion."  ECF No. 59, at 9.  As with their arguments above, Defendants do not advance any specific argument or

cite any case law in support of their contention. *See id.* 2.1 hours for this task is "is not 'so excessive as to be unreasonable and unreliable on [its] face.'" *Velasquez Flores*, 2024 WL 916250, at *14 (quoting *Jones v. Bryant*, No. 01-CV-936, 2004 WL 1013308, at *1 (M.D.N.C. May 4, 2004)) (finding 3.9 hours reasonable for "researching, drafting, editing, and filing . . . Motions *in Limine*" that used boilerplate language); *see Carpaneda v. Domino's Pizza, Inc.*, 89 F. Supp. 3d 219, 225-26 (D. Mass. 2015) (declining to strike 3.3 hours spent on a motion to amend the complaint).

### f.   Time Spent on Case Management and Client Communication

Finally, Plaintiff seeks compensation for 6.3 hours her counsel spent on case management and client communication, ECF No. 62-1, at 4-6; 2.3 hours for calculating damages, *id.* at 10; 7.2 hours for settlement and the Joint Motion for Approval of Settlement, *id.* at 10-12; and 14.2 hours for the preparation of the Fee Petition.[7] Defendants do not challenge any of the remaining specific entries in these categories, and each is sufficiently described such that the Court can conclude they are reasonable. Accordingly, the Court will allow the full amount requested in these categories.

### C.   The Lodestar

Equipped with the reasonable rates and reasonable hours expended, the Court determines the lodestar figure by multiplying them together:

| Timekeeper | Reasonable Rate | Reasonable Hours[8] | Lodestar |
|---|---|---|---|
| Omar Melehy | $475 | 17.7 | $8,407.50 |
| Suvita Melehy | $475 | 8.1 | $3,847.50 |
| Andrew Balashov | $300 | 23.5 | $7,050.00 |
| Paralegals/Paraprofessionals | $150 | 23.6 | $3,540.00 |
| Total Lodestar | | | $22,845.00 |

---

[7] With respect to the Fee Petition, Plaintiff requests 7.3 hours for the initial Motion and 6.9 hours for the Reply. ECF No. 63-1, at 13-14.

[8] The total number of hours worked per timekeeper is drawn from Plaintiff's supplemental filing, ECF No. 65-1.

Most of the Johnson factors are "subsumed in the rate and hour analysis," *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 646 (D. Md. 2012).  Defendants do not present any opposition to Plaintiff's requested fees outside of the applicable rate and the hours reasonably expended.  ECF No. 59.  The Court, likewise, sees no need to adjust this award further.  Plaintiff succeeded on her claims, managing to recover $8,500 which constitutes "100 percent of her requested backpay and an additional 30 percent of her requested liquidated damages."  ECF No. 55.  "As discussed above, a review of Plaintiff's time record does not reveal any overly redundant, excessive, or unnecessary billing beyond that which has been subtracted from the fee award."  *Saman v. LBDP, Inc.*, No. 12-CV-1083, 2013 WL 6410846, at *8 (D. Md. Dec. 6, 2023).  For these reasons, the Court will award the full lodestar of $22,845.00 without any additional downward departures.

## II.    Costs

A prevailing FLSA plaintiff may recover costs "for reasonable litigation expenses" subject to a district court's discretion.  *Jones v. Dancel*, 792 F.3d 395, 404 (4th Cir. 2015) (quoting *Daly*, 790 F.2d at 1084); 29 U.S.C. § 216(b); *Roy v. Cnty. of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998).  However, "[c]ourts may deny costs if supported by 'good reason,'" like "misconduct by the prevailing party . . . [or] excessiveness of the costs in a particular case."  *Ramnarine*, 2022 WL 16709764, at *15 (first quoting *Ellis v Grant Thornton LLP*, 434 Fed. App'x 232, 235 (4th Cir. 2011), then quoting *U.S. EEOC v. Enoch Pratt Library*, No. 17-CV-2860, 2022 WL 4017294, at *1 (D. Md. Sept. 2, 2022)).

In addition to attorney's fees, Plaintiff also seeks reimbursement of: (1) $402 filing fee; (2) $97.03 to conduct online research; (3) $190.20 in photocopies; (4) $81.99 in postage; and (5) $437.75 for process of service.  ECF No. 56-7.  In total, Plaintiff requests $1,208.97.  Defendants do not oppose any of these requests.  ECF No. 59.  The Court will award all costs because each

item is a "reasonable out-of-pocket expense[] incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Plaintiff has provided detailed supporting documentation for each expense and explained how they relate to the case.[9] ECF No. 56-4, at 7-8; 56-7. The costs are not excessive, nor has there been misconduct by the prevailing party.

## CONCLUSION

For the aforementioned reasons, Plaintiff's counsel will be awarded $22,845.00 in attorneys' fees and $1,208.97 in costs.

So ordered.

Date: October 31, 2024

_____/s/_____
Ajmel A. Qureshi
U.S. Magistrate Judge

---

[9] Plaintiff's counsel could have provided additional detail regarding the $190.20 incurred for printing and copying, such as a description of the document printed and how it related to the case. *See, e.g. Ramnarine*, 2022 WL 16709764, at *16 (awarding costs for printing and copying used to create exhibit binders). The Court nonetheless finds the expenses reasonable in this instance.